IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

PATRICIA MITCHELL,              )
                                )
        *Plaintiff*,            )
                                )
    v.                          )   Civil Action No. 1:23-cv-00653 (PTG/LRV)
                                )
BOOZ ALLEN HAMILTON INC.,       )
                                )
        *Defendant*.            )

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on Defendant Booz Allen Hamilton's Motion to Dismiss Plaintiff's Third Amended Complaint ("Motion"). Dkt. 63. In the Third Amended Complaint, Plaintiff Patricia Mitchell, proceeding *pro se*, alleged claims of: (1) sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 to 2000e-3; and (2) retaliation under Title VII. Dkt. 61 at 10, 26. Plaintiff opposed Defendant's Motion to Dismiss, Dkt. 66, and Defendant filed a reply brief, Dkt. 67. The Court granted Plaintiff's request to file a sur-reply. Dkts. 69, 71. The Court heard oral argument on Defendant's Motion on January 18, 2024. Dkt. 72. For the reasons that follow, the Court grants Defendant's Motion.

### I. Factual Background

In April 2022, Plaintiff was hired by Defendant. Dkt. 61 ("Am. Compl.") at 4. From April 2022 to November 21, 2022, both Plaintiff and Mr. Francis Agyeman-Duah were Senior Database Administrators who "reported all issues" to Christopher Hubbard. *Id.* at 2. Plaintiff identifies Mr. Agyeman-Duah as a similarly-situated comparator. *Id.*

In the early weeks of her employment, Plaintiff's supervisor, Mr. Hubbard, called her after work hours to inform her that she did not complete her timesheet correctly and stated that she "can be fired for this." *Id.* at 5.

On July 21, 2022, Mr. Delacalzada-Delong, a male colleague, asked Plaintiff why she "was not logged into the servers" and accused her of being non-responsive. *Id.* at 6. Plaintiff alleges that her work did not require her to be on the servers at that time. *Id.* at 7. The next day, on July 22, 2022, Mr. Delacalzada-Delong sent an email to Mr. Hubbard stating that Plaintiff was non-responsive. *Id.*

On August 24, 2022, after informing her team that she had completed an assignment, she "was subject to attend a review meeting, in which . . . Plaintiff had to prove that she completed the assignment." *Id.* at 6. Plaintiff states that Mr. Agyeman-Duah never had to prove he had completed an assignment. *Id.*

In September 2022, Mr. Agyeman-Duah accused Plaintiff of not working, stating, "I do not feel you are doing any work or pulling your weight around here[.]" *Id.* at 6. Plaintiff states that none of her male team members faced similar accusations. *Id.*

Prior to September 6, 2022, Defendant learned that Plaintiff had a business, Solar Database Consulting Services, registered under her name. *Id.* at 8. Plaintiff maintains that she did not operate this business during her employment with Defendant. *Id.* Plaintiff states that the business earned no revenue and that she did not report the company to Defendant in her pre-hire paperwork because she had never operated the business, apart from registering it. *Id.* at 17. Defendant ultimately found that Plaintiff's responses concerning her business were not credible. *Id.* Defendant's Human Resources Department ("HR") also questioned why Plaintiff did not properly report civil cases to which she was a party as required in her pre-hire paperwork. *Id.* at 19. Plaintiff

states that she assumed the question concerning civil cases only addressed those cases that were currently pending. *Id.* at 19.

During Plaintiff's employment, HR received reports accusing Plaintiff of plagiarism and time fraud. *Id.* at 9. Plaintiff maintains that she provided proper citations within the document in question with respect to the accusation of plagiarism. *Id.* at 14. Plaintiff also states that she accounted for her work activities on September 15 and 16, 2022, as required. *Id.* at 18.

On September 27, 2022, during a meeting, Mr. Agyeman-Duah directly chastised Plaintiff in front of others for not checking the status of a drive, although it was the responsibility of the team to do so. *Id.*

On October 3, 2022, Plaintiff filed an internal sex discrimination complaint with Ms. Monique Mignon, an Employee Relations representative. *Id.* at 4. On October 21, 2022, Ms. Mignon informed Plaintiff that Defendant's internal investigation did not substantiate Plaintiff's claims that she was treated differently due to her gender. *Id.* at 4–5; *see also* Dkt. 61-9 at 1.

On November 21, 2022, Defendant terminated Plaintiff's employment on the basis that she had violated the Conflict of Interest Policy and the Maintaining a Trusted Workforce Policy. Am. Compl. at 5; *see also* Dkt. 61-17.

On January 5, 2023, Plaintiff filed a Charge with the EEOC.[1] Am. Compl. at 5.

On February 28, 2023, Plaintiff filed this civil action in the U.S. District Court for the District of Columbia. Dkt. 1. On May 19, 2023, Plaintiff's civil action was transferred to this District. Dkt. 4.

---

[1] Plaintiff did not file a copy of the Charge with the Third Amended Complaint.

On August 10, 2023, Plaintiff received a Notice of Right to Sue from the EEOC.[2] Am. Compl. at 5.

## II. Legal Standard

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)) (alterations in original).

## III. Analysis

Defendant argues that Plaintiff's discrimination and retaliation claims must be dismissed for failure to state a claim. Dkt. 64 ("MTD") at 14–22. With respect to Plaintiff's sex discrimination claim, it is not clear if Plaintiff is alleging discrimination based on disparate treatment or a hostile work environment. Out of an abundance of caution, the Court addresses both.

---

[2] Plaintiff did not file a copy of the Notice of Right to Sue with the Third Amended Complaint. A copy can be found at Dkt. 19-1 at 12.

### a. Plaintiff's Disparate Treatment Claim Fails To State a Claim

Absent an allegation of direct evidence of discrimination, to state a *prima facie* claim of disparate treatment, a plaintiff must allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 132 S. Ct. 1327 (2012). "While a plaintiff is not required to plead facts that constitute a prima facie case . . . to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right of relief above the speculative level[.]'" *Id.* (first citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002); and then quoting *Twombly*, 550 U.S. at 555).

Defendant concedes that as a woman, Plaintiff is a member of a protected class. MTD at 16. In its original memo, Defendant concedes that termination from employment qualifies as an adverse action.[3] *Id.* Defendant argues that Plaintiff's discrimination claim fails because she does not sufficiently allege satisfactory job performance or different treatment from a similarly-situated employee. *Id.* at 14–19.

The Court agrees that Plaintiff has not sufficiently alleged that she had satisfactory job performance during the time she was employed with Defendant. Although Defendant considers documents attached to Plaintiff's filings, the Court need only look to Plaintiff's Third Amended Complaint to determine the following:

- During the initial weeks of her employment, Mr. Hubbard, Plaintiff's supervisor, informed Plaintiff that she had not completed her timesheet correctly. Am. Compl. at 5.
- On July 22, 2022, a coworker informed Plaintiff's supervisor that Plaintiff was unresponsive during a virtual meeting. *Id.* at 6–7.

---

[3] In its Reply, however, Defendant argues that termination cannot serve as the adverse action for the discrimination claim; only the retaliation claim. *See* Dkt. 67 at 5–7. Because the Court finds that the second and fourth elements of the disparate treatment claim are not sufficiently alleged, the Court will not address this argument, found only in Defendant's Reply.

- In August 2022, a review meeting was scheduled to review Plaintiff's completion of a recent assignment, which her supervisor, Mr. Hubbard, attended. *Id.* at 6.
- Plaintiff was reported to HR for plagiarism, time fraud, not completing her duties, and not truthfully completing her pre-hire paperwork (for failing to report secondary employment and failing to report civil litigation to which she had been a party). *Id.* at 8–9.

These allegations appear to contradict Plaintiff's allegation that she "received no write-ups or warnings regarding her performance[.]" *Id.* at 11. Thus, even limiting review to the four corners of Plaintiff's Complaint, the Court finds that Plaintiff has failed to allege satisfactory job performance.

The Court also agrees that Plaintiff has failed to allege that similarly-situated employees were treated differently due to their gender. *See* MTD at 18–19. Plaintiff alleges that her "main comparator" is Mr. Francis Agyeman-Duah, an employee who "carried out the same essential nature of duties" as Plaintiff and who shared the same job title of Senior Database Administrator. Am. Compl. at 2.

When a plaintiff pleads that a similarly-situated employee outside of her protected class received more favorable treatment, as Plaintiff does here, she must allege a comparator who is "similar in all relevant respects[,]" meaning they had the "same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (alteration in original) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Mr. Agyeman-Duah is a man and thus, outside of Plaintiff's protected class. However, it is unclear whether Mr. Hubbard was both Plaintiff's and Mr. Agyeman-Duah's supervisor. Plaintiff only alleges that she and Mr. Agyeman-Duah "reported all issues and the status of the databases to [Mr.] Hubbard each morning." Am. Compl. at 2.

6

Even assuming they do have the same supervisor, Plaintiff fails to allege that Mr. Agyeman-Duah also had comparable issues reported to HR. Per the *Haywood* standard, if Defendant did not have similar concerns about Mr. Agyeman-Duah's performance and credibility, he could not qualify as a similarly-situated comparator because he and Plaintiff did not "engage[] in the same conduct[.]" Rather, their conduct is distinguishable, as is their employer's treatment of them for it. Thus, the Court finds that Plaintiff has failed to allege that Mr. Agyeman-Duah is a similarly-situated comparator.

Plaintiff also alleges that Mr. Matthew Cohen and Mr. Stephen Delacalzada-Delong are comparators. Am. Compl. at 3. Mr. Delacalzada-Delong served as the Lead Engineer-Associate and Mr. Cohen served as the Lead Engineer. *Id.*

To allege a similarly-situated comparator, "Title VII requires the compared jobs to be only 'similar[.]'" *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019). "While there is no bright-line rule for what makes two jobs 'similar' under Title VII, courts consider 'whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision.'" *Id.* (quoting *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005)).

Based on Plaintiff's allegations, the Court finds that Plaintiff, Mr. Cohen, and Mr. Delacalzada-Delong were not similarly situated. They all had different job titles and presumably, different job descriptions—Plaintiff as Senior Database Administrator, Mr. Delacalzada-Delong as the Lead Engineer-Associate, and Mr. Cohen as the Lead Engineer. *See* Am. Compl. at 2–3. Although Plaintiff alleges that they "participated in daily meetings reporting database status to same Career Manager, Christopher Hubbard[,]" it is unclear whether they all had the same

7

supervisor. *Id.* at 3. Given that Mr. Delacalzada-Delong and Mr. Cohen were engineers and Plaintiff is not, it is also unclear that they had comparable education and other qualifications. Thus, the Court finds that Plaintiff has failed to allege that Mr. Delacalzada-Delong and Mr. Cohen are similarly-situated comparators.

In conclusion, the Court finds that Plaintiff fails to allege that she exhibited satisfactory work performance while employed by Defendant and fails to allege similarly-situated comparators received more favorable treatment than her. Thus, the Motion to Dismiss with respect to the disparate treatment claim is granted.

### b. Plaintiff's Hostile Work Environment Claim Fails

To state a hostile work environment claim, Plaintiff must plausibly allege that the offending conduct was: (1) unwelcome; (2) because of her protected class; (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment; and (4) imputable to her employer. *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011). "[W]hen determining whether the harassing conduct was objectively severe or pervasive, [courts] must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *EEOC v. Central Wholesalers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009) (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)).

While Plaintiff does not use the word "hostile" in her Third Amended Complaint, she does allege the following acts that may allude to a hostile work environment claim:

- Mr. Hubbard warned her that she could be fired for not submitting her timesheet correctly. Am. Compl. at 5.
- Plaintiff's colleagues accepted proposals that came from male colleagues, even though her colleagues rejected the same proposals from her. *Id.* at 7.

8

- Mr. Delacalzada-Delong accused her of being unresponsive and reported her to Mr. Hubbard. *Id.* at 6–7.
- Mr. Agyeman-Duah chastised her in front of others for not checking the drive status. *Id.* at 12–13.
- Mr. Agyeman-Duah informed her that she was not doing any work and was not pulling her weight. *Id.* at 6.
- Mr. Cohen performed searches on social media about her. *Id.* at 7.
- HR received reports about Plaintiff alleging time fraud, plagiarism, non-responsiveness, and inaccurate statements made on pre-hire paperwork (concerning secondary employment and civil litigation). *Id.* at 9, 14.

Looking at all of this conduct over the course of Plaintiff's seven months of employment, the Court finds that this conduct is not sufficiently severe or pervasive to state a hostile work environment claim. The interactions Plaintiff describes were not frequent or severe in nature. Although perhaps uncomfortable, statements made about Plaintiff were not offensive as to her protected class. Such statements about her work performance may have interfered with her work, but not to an unreasonable extent. Thus, the Court finds that Plaintiff's hostile work environment claim must also be dismissed for failure to state a claim.

### c. Plaintiff's Retaliation Claim Fails

Defendant argues that Plaintiff's Complaint fails to state a retaliation claim because she fails to allege that her protected activity was casually connected to Defendant's adverse action. MTD at 19–22. Defendant is correct.

To prevail under the *McDonnell Douglas* framework, Plaintiff must first establish a *prima facie* retaliation claim by alleging: "(1) engagement in protected activity, (2) 'materially adverse action . . . which . . . might well have dissuaded a reasonable worker from [sic] making or supporting a charge of discrimination,' and (3) causality." *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 831 (E.D. Va. 2016) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

9

"[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126 (4th Cir. 2021) (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). While retaliation requires a "but for" cause, this proof is not required at a motion to dismiss stage. *See, e.g., Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (discussing the causation standard in the context of a motion for summary judgment). "[T]he employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish" causality. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

Here, Plaintiff fails to allege that those who terminated her—including Gabriel Runyon, who signed her Termination Letter, *see* Dkt. 61-1, and the Disciplinary Action Committee, mentioned in the Complaint, *see* Am. Compl. at 23-24—knew that Plaintiff had filed an internal sex discrimination complaint. In addition, concerns about Plaintiff's compliance with Defendant's policies, which began in or about mid- to late September 2022, predated her filing the internal sex discrimination complaint on October 3, 2022. *See id.* at 4, 18-19.

"Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)).

Similar to *Slattery*, which the Fourth Circuit has cited, Plaintiff's termination was "both part, and the ultimate product of, 'an extensive period of progressive discipline[.]'" 248 F.3d at 95. Here, Plaintiff's termination was the ultimate product of concerns brought to HR and Defendant's

10

internal investigation into concerns about Plaintiff's pre-hire paperwork, which involved multiple interviews with Plaintiff. Because these actions began before Plaintiff engaged in protected activity, even if Defendant was aware of her protected activity (which has not been established), an inference of retaliation due to temporal proximity does not arise.

Plaintiff's Complaint fails to plead facts showing that her protected activity of filing an internal complaint concerning sex discrimination was casually connected to her termination. Thus, Defendant's Motion to Dismiss as to Plaintiff's retaliation claim is granted. For the above stated reasons, it is hereby

> **ORDERED** that Defendant's Motion to Dismiss (Dkt. 63) is **GRANTED**; and it is further
>
> **ORDERED** that Plaintiff's claims are **DISMISSED**.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of the Court within thirty (30) days of the date of entry of the Order, which will be filed today. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is **DIRECTED** to send a copy of this Order to Plaintiff and close this civil action.

Entered this 7th day of March, 2024.
Alexandria, Virginia

Patricia Tolliver Giles
United States District Judge